## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**WALTER PATRICK LIMACHER,**
**GEORGE LUEVANO,**
**WILHELMINA H. LUEVANO,**
and **JOE SANCHEZ,**

    Plaintiffs,

  vs.           No. **02-CV-477 MCA/LAM** (ACE)

**MICHAEL HURD, JALAYNE SPIVEY**,
a/k/a Jalayne Spiey, **KENNETH L. CRAMER**,
**GLENDA LONG, HUBERT QUINTANA,**
and **STATE OF NEW MEXICO,**

    Defendants.

### MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on the following motions: the ***Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment on Count III as Against Jalayne Spivey and the State of New Mexico*** [Doc. No. 50] filed on August 13, 2002; the ***Motion to Dismiss Count IV as Against Defendants Jalayne Spivey and the State of New Mexico*** [Doc. No. 52] filed on August 13, 2002; the ***Motion to Dismiss Count V as Against Defendants Jalayne Spivey and the State of New Mexico*** [Doc. No. 54] filed on August 13, 2002; ***Defendant Cramer's Motion to Dismiss and Supporting Memorandum*** [Doc. No. 62] filed on August 28, 2002, and the oral motion to dismiss articulated by counsel

for Defendants Spivey and the State of New Mexico at the hearings on July 15, 2002, and July 25, 2002, which is supported by the jurisdictional arguments in their response brief [Doc. No. 27] regarding *Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction* [Doc. No. 20.]  Having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises, the Court determines that Defendants Spivey and Cramer are entitled to qualified immunity with respect to the federal civil-rights claims asserted in Plaintiffs' *Complaint*, and that the remainder of Plaintiffs' federal claims are subject to dismissal for lack of subject-matter jurisdiction or failure to state a claim upon which relief may be granted.  Having thus disposed of all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and Defendant Hurd's counterclaims.  Accordingly, these state-law claims and counterclaims are remanded to the state court where this action originated.

## I.    <u>BACKGROUND</u>

On April 9, 2002, Plaintiffs filed a civil action in the Twelfth Judicial District Court of Lincoln County, New Mexico.  Plaintiffs' *Complaint* contains five counts which all arise from a dispute over Plaintiff Limacher's construction of a temporary dam that diverted all of the water flowing in the Rio Ruidoso to the F. Hilbern Ditch at various times during the Summer of 2001.  Count I asserts state-law claims of trespass, interference with ditch rights, water rights, and easement rights and irrigation works against Defendants Hurd, Long, and Quintana.  Count II asserts state-law claims of malicious abuse of process against Defendants Hurd, Spivey, and Cramer.  Count III asserts federal civil-rights claims under 42 U.S.C. §§

1983 and 1985 and the United States Constitution against Defendants Hurd, Spivey, and Cramer. Count IV asserts that an order issued by the Chief of the Water Rights Division of the Office of the State Engineer brought about an unlawful taking of property without just compensation in violation of the Fourteenth Amendment to the United States Constitution and Article II, Sections 18 and 20 of the New Mexico Constitution. Count V contains a prayer for preliminary and permanent injunctive relief that rests on the allegations in the preceding counts. Plaintiff's *Complaint* also prays for compensatory and punitive damages, as well as an award of attorney fees and costs.

The action was removed to this Court pursuant to a notice of removal filed by Defendants Spivey and the State of New Mexico on April 29, 2002. [Doc. No. 1.] In conjunction with his *Answer* to Plaintiffs' *Complaint*, Defendant Hurd filed counterclaims against Plaintiff Limacher for assault, attempted battery, and trespass on May 14, 2002. [Doc. No. 13.]

On June 19, 2002, Plaintiffs filed their *Motion for a Temporary Restraining Order and/or Preliminary Injunction* requesting that the Court enjoin Defendants Hurd, Long, and Quintana from interfering with Plaintiffs' use, operation, maintenance, repair, and access to the diversion dam and weir associated with the F. Hilbern Ditch. [Doc. No. 20.] The Court held hearings on Plaintiff's motion on July 15, 2002, and July 25, 2002, and filed a *Memorandum Opinion and Order Denying Motion for Preliminary Injunction* [Doc. No. 43] on July 31, 2002.

At the preliminary injunction hearing and in subsequent motions, Defendants Spivey and the State of New Mexico have called into question this Court's subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  [Doc. No. 27, 52.]  Some of the Defendants also filed motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  [Doc. No. 46, 48, 50, 62.]

On August 20, 2002, the Court filed an *Order* [Doc. No. 61] granting an *Unopposed Motion to Stay Proceedings and Extend Time to Respond* [Doc. No. 60].  Pursuant to that *Order*, formal discovery conducted after the preliminary injunction hearing in this matter was limited to "interrogatories and requests for production directed only to Defendants Cramer and Spivey limited to the issues pertaining to qualified immunity."  [Doc. No. 61.]  In addition, Plaintiffs were granted 45 days to respond to the motions filed by Defendants Spivey and the State of New Mexico [Doc. No. 46, 48, 50, 52, 54], and further proceedings (*i.e.*, additional discovery) were stayed pending a decision on the qualified immunity and jurisdictional issues raised at the preliminary injunction hearing and in the pending motions.

The Court does not construe the *Order* of August 20, 2002, as precluding a ruling on any motions that concern qualified immunity or subject-matter jurisdiction, nor does the Court construe that *Order* as precluding a ruling on any motions which are not dependent on discovery, such as motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The *Order* of August 20, 2002, also did not impose any restrictions on the parties right to refer to, or rely upon, the evidence presented at the preliminary injunction hearing.

-4-

In this regard, the Court's *Memorandum Opinion and Order Denying Motion for Preliminary Injunction* contains the following findings of fact, which Defendants Spivey and the State of New Mexico incorporate in their briefs in support of their motions regarding Counts III, IV, and V of the *Complaint* [Doc. No. 50, 52, 54]:

1. At all times material to Plaintiffs' complaint, Plaintiffs Walter Patrick Limacher, George Luevano, Wilhemina H. Luevano, and Joe Sanchez were owners of water rights in the Rio Ruidoso that were adjudicated by the District Court of Chaves County, New Mexico in State of New Mexico ex rel. Reynolds v. L.T. Lewis, Nos. 20294 and 22600 (consolidated) (offers of judgment and orders filed June 26, 1979; Nov. 26, 1979; and Jan. 2, 1980).

2. A point of diversion associated with Plaintiffs' water rights is the F. Hilbern Ditch, which diverts on the North Bank of the Rio Ruidoso near San Patricio, New Mexico. Plaintiff Limacher uses the water he receives through the F. Hilbern Ditch to irrigate approximately fifty acres of pasture that he uses for livestock grazing.

3. Plaintiff Limacher's ownership of water rights is not in dispute.

4. Plaintiff Limacher's right to divert water from the F. Hilbern Ditch is not in dispute.

5. The matter in dispute is the manner in which Plaintiffs seek to divert water from the Rio Ruidoso to the F. Hilbern Ditch.

6. Plaintiff Limacher has filed an application for a second supplemental well for the acreage on his property associated with the F. Hilbern Ditch, which is currently pending before the Office of the State Engineer. In addition to the acreage associated with the F. Hilbern Ditch, Plaintiff Limacher's property encompasses approximately thirty acres of pasture that can be irrigated by a river pump, as well as approximately fifteen acres of pasture that can be irrigated by means of the San Patricio Ditch, or a supplemental well associated with that ditch. The San Patricio Ditch currently is not providing water to Plaintiff Limacher because he refuses to pay his dues to the San Patricio Ditch Association.

7.     At all times material to Plaintiffs' Complaint, the diversion works for the F. Hilbern Ditch were located on lands owned by Defendant Michael Hurd.

8.     At all times material to Plaintiffs' complaint, Defendants Glenda Long and Hubert Quintana were employees of Defendant Hurd, or businesses in which Defendant Hurd has an ownership interest.

9.     At all times material to Plaintiffs' complaint, Defendant Kenneth L. Cramer was employed by Lincoln County, New Mexico as a Deputy Sheriff.

10.     At all times material to Plaintiffs' complaint, Defendant Jalayne Spivey was employed by the Roswell District Office of the State Engineer of New Mexico as a Water Resource Specialist II.  Defendant Spivey's duties included administration and enforcement regarding water rights in the basin where the point of diversion for the F. Hilbern Ditch is located.

11.     In or about June 2001, Plaintiff Limacher and his employees constructed a dam on the Rio Ruidoso for the purpose of diverting water to the F. Hilbern Ditch.

12.     In the months of June and July of 2001, Defendant Spivey received complaints from Defendant Quintana and other users of water from the Rio Ruidoso that there was no flow of water in the river below the diversion point for the F. Hilbern ditch and that all water flowing in the river at that point had been diverted into the F. Hilbern ditch by means of a dam that had recently been constructed from bank to bank using rocks, wooden poles, and a plastic tarp.

13.     On or about July 7, 2001, after conferring with Defendant Spivey, Defendant Quintana took down a portion of the recently constructed dam to allow some water to flow in the Rio Ruidoso downstream of the diversion point for the F. Hilbern Ditch.

14.     The next day Plaintiff Limacher, or employees acting under his direction, rebuilt the dam to its full height.  After noticing that the dam had been rebuilt, Defendant Quintana again took down a portion of the dam on or about July 8, 2001, to allow some water to flow in the Rio Ruidoso downstream of the diversion point for the F. Hilbern Ditch.

-6-

15.     On or about July 11, 2001, Plaintiff Limacher complained to the Lincoln County Sheriff's Office about individuals diverting his irrigation water.  Deputy Sheriff Patrick O'Brien commenced an investigation of Plaintiff Limacher's complaint and, as part of that investigation, contacted Defendant Spivey, Defendant Hurd, and Plaintiff Limacher, among others.

16.     On or about July 12, 2001, Defendant Spivey visited the site of the dam and confirmed that it was diverting all of the water flowing in the Rio Ruidoso to the F. Hilbern Ditch. After researching the files of the Office of the State Engineer and interviewing several witnesses, Defendant Spivey concluded that Plaintiff Limacher did not have any permits, or other legal authority, to construct the dam that diverted the entire flow of the river into the F. Hilbern Ditch.  Defendant Spivey also concluded that the dam had the effect of impairing the senior water rights of downstream users, resulted in erosion of the river bank, and left pools of stagnant water downstream.

17.     Based on the results of Defendant Spivey's investigation, the Chief of the State Engineer's Water Rights Division, Paul Saavedra, issued a Compliance Order dated July 16, 2001.  The Compliance Order directed Defendant Hurd to breach the dam located on his property by July 20, 2001, and to return the ditch heading to its original state.

18.     On or about July 19, 2001, employees of Defendant Hurd removed the dam and Defendant Spivey delivered a copy of the Compliance Order to one of Plaintiff Limacher's employees.

19.     In a letter addressed to the State Engineer and Gary Mitchell dated July 28, 2001, Plaintiff Limacher acknowledged receiving a copy of the Compliance Order and indicated, among other things, that he was obtaining water from sources other than the F. Hilbern Ditch.

20.     On or about August 10, 2001, Defendant Cramer, along with another police officer, responded to a complaint that individuals were building a dam on the Rio Ruidoso.  Defendant Cramer and the other officer went to the property of Defendant Hurd, where they observed that the padlock to the gate had been cut and that Plaintiff Limacher, Plaintiff George Luevano, and Michael D. Martinez were rebuilding the dam.   After making these observations, Defendant Cramer informed the three men that they needed to leave because they were trespassing.  Plaintiff Limacher refused to leave and was arrested and transported to the Lincoln County Detention Center.

21.     In an undated letter received by the Office of the State Engineer on August 23, 2001, Gary Mitchell, acting as counsel for Plaintiff Limacher, requested a hearing on the Compliance Order as well as a negotiation "to hopefully resolve a conflict prior to the hearing."  Mr. Mitchell and the State Engineer's staff disagree about whether an informal resolution of the matter was reached through negotiation and what communications occurred as part of that negotiation.

22.     On or about September 13, 2001, Defendant Spivey and Art Mason, the State Engineer's District II Supervisor, conducted a site inspection of the Rio Ruidoso at the diversion point for the F. Hilbern Ditch.  At that time, Defendant Spivey observed that there was some flow of water both in the ditch and in the river downstream from the ditch, that the dam across the river at that location had been partially rebuilt, and that the flow of water into the F. Hilbern Ditch was impeded by a build-up of silt and trash.

23.     On or about April 9, 2002, Plaintiffs filed a civil action in the State of New Mexico's Twelfth Judicial District Court.  On or about April 29, 2002, Defendants Spivey and the State of New Mexico filed a notice of removal in that civil action, and the case was removed to this Court.  No objections to the removal were filed within the thirty-day period set forth in 28 U.S.C. § 1447(c) (2000).

24.     On or about June 19, 2002, Plaintiffs filed their Motion for a Temporary Restraining Order and/or Preliminary Injunction in this case requesting that the Court enjoin Defendants Hurd, Long, and Quintana (collectively "the Hurd Defendants") from interfering with Plaintiffs' use, operation, maintenance,  repair, and access to the diversion dam and weir associated with the F. Hilbern Ditch.

25.     On or about June 28, 2002, Defendant Spivey conducted a site inspection of the Rio Ruidoso at the diversion point of the F. Hilbern Ditch. At that time, it appeared to Defendant Spivey that nobody had cleaned the ditch since her last visit.  She also observed that the ditch contained stagnant water up to the point of the culvert, that the dam had been breached, that the materials used to construct the dam had been washed downstream, and that the river was flowing downstream of the diversion point for the ditch.  Defendant Spivey also observed certain portions of Plaintiff's property that appeared green and irrigated with standing water.

[Doc. No. 43.]

In their response to the motions of Defendants Spivey and the State of New Mexico regarding Counts III, IV, and V of the *Complaint*, Plaintiffs have not provided an enumerated list indicating which, if any, of these factual findings they dispute.  Rather, Plaintiffs simply set forth their own enumerated list of factual allegations, with citations to the evidence presented at the preliminary injunction hearings, and request additional time to conduct discovery on certain issues after the stay pursuant to the Court's *Order* [Doc. No. 61] of August 20, 2002, is lifted.  [Doc. No. 68, 77, 78.]  The additional factual allegations in Plaintiffs' response briefs can be summarized as follows.

First, Plaintiffs point to a symbol denoting a diversion dam that appears on an illustration which is part of the hydrographic survey that was incorporated in the state court's order in State of New Mexico ex rel. Reynolds v. L.T. Lewis, Nos. 20294 and 22600 (consolidated), supra.  According to Plaintiffs, this symbol indicates a diversion dam that extends all the way across the stream, and its incorporation in the state court's order means that Plaintiffs' water rights include the right to use "a small temporary diversion structure across the bed and perpendicular to the direction of the flow of the river."  [Doc. No. 68, at 2-3.]

Second, Plaintiffs point to a series of correspondence and reports previously introduced in this Court at the hearings on July 15, 2002, and July 25, 2002, which suggest that Defendant Spivey communicated with Defendants Hurd and Quintana, as well as Plaintiff Limacher, regarding the diversion dam in the days leading up to the issuance of the Office of the State Engineer's Compliance Order on July 16, 2001.  In particular, these

-9-

documents indicate that Defendant Quintana conferred with Defendant Spivey before taking down a portion of the dam on his own initiative on July 7, 2001.  The documents also indicate that on July 12, 2001, Defendants Hurd and Spivey, accompanied by a sheriff's deputy who is not a party to this action, went to Plaintiff Limacher's residence and spoke with him about the need to remove the dam.  (Doc. No. 68, at 5-8; Ex. A-1, A-2, A-5 to Doc. No. 27.)

The same series of correspondence to which Plaintiffs refer also indicates that Defendant Spivey had unsuccessfully attempted to contact Plaintiff Limacher prior to July 12, 2001, and that when she did contact him on that date, he was verbally abusive and made statements to the effect that people who destroyed irrigation dams could get shot.  In addition, the evidence of record reflects that after receiving a copy of the Compliance Order, Plaintiff Limacher wrote a long letter to his attorney and the State Engineer explaining the basis for his position, and that his attorney subsequently requested a hearing on the Compliance Order.  (Defts.' Ex. A-5, A-7, C to Doc. No. 27.)

## II.   ANALYSIS

### A.   Standards of Review

#### 1.   Dismissal for Lack of Subject-Matter Jurisdiction

In moving to dismiss Plaintiff's *Complaint* for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), Defendants "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."  Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  In

reviewing such a motion, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).   In this context, the Court's "reference to evidence outside the pleadings does not convert the [Rule 12(b)(1)] motion into a Rule 56 motion." Stuart, 271 F.3d at 1225.  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

### 2.    Dismissal for Failure to State A Claim

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Dismissal on these grounds may occur *sua sponte* or upon a defendant's motion.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (concluding that "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").  When requested in a defendant's motion, dismissal under this rule is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  *Sua sponte* dismissal in this context is only appropriate when it is patently obvious that the plaintiff cannot prevail on the facts alleged and allowing an opportunity to

-11-

amend would be futile.  See Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991);

Curley, 246 F.3d at 1284.

     "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d

1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the

complaint are accepted as true and viewed in the light most favorable to the nonmoving

party.  GFF Corp., 130 F.3d at 1384.

     "In addition to the complaint, the . . . [C]ourt may consider documents referred to in

the complaint if the documents are central to the plaintiff's claim and the parties do not

dispute the documents' authenticity."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941

(10th Cir. 2002).  Thus, "if a plaintiff does not incorporate by reference or attach a document

to its complaint, but the document is referred to in the complaint and is central to the

plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be

considered on a motion to dismiss."  GFF Corp., 130 F.3d at 1384.  The Court "'may also

take judicial notice of matters of public record' without converting a 12(b)(6) motion into

a motion for summary judgment."  Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir.

1994).

### 3.    **Summary Judgment**

     To the extent that the briefs regarding Defendants' motions to dismiss for

failure to state a claim refer to other material outside of the pleadings, those motions may be

reviewed under the  summary-judgment standard articulated in Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b).  Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

The local rules regarding summary judgment procedures further provide, in relevant part, that:  "The memorandum in support of the motion must initially set out a concise statement of all of the material facts as to which movant contends no genuine issue exists." D.N.M. LR-Civ. 56.1(b).  Similarly, the "memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist."  Id.  Both parties' statements of material facts "must be numbered" and "must refer with particularity to those portions of the record" upon which the party relies.

Id. Material facts listed in the movant's statement which are not specifically controverted by the non-movant in accordance with these local rules will be deemed admitted. See id.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct. See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity. See id. at 1156. If the plaintiff does establish the violation of a clearly-established constitutional or statutory right, then (for purposes of the defendant's summary-judgment motion) the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. See id.

-14-

**B.**   **Plaintiffs' Federal Claims**

Plaintiff's *Complaint* seeks damages, injunctive relief, and attorney fees pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, to redress alleged violations of the Fourteenth Amendment to the United States Constitution.  42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The relevant provision of 42 U.S.C. § 1985 "generally describes a conspiracy of two or more persons for the purpose of depriving another of equal protection of the laws or equal privileges and immunities under the laws."  Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990).  42 U.S.C. § 1988 provides for the award of attorney fees to parties that prevail in litigation under the preceding sections.

Persons sued in their individual capacity under these civil-rights statutes generally are entitled to qualified immunity unless it is shown that their actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue.  See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000) (discussing qualified immunity under 42 U.S.C. § 1983); Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994) (extending qualified immunity to actions under 42 U.S.C. § 1985).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme

-15-

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

Private individuals who act as co-conspirators in violating 42 U.S.C. §§ 1983 or 1985 may not be entitled to the defense of qualified immunity under certain circumstances where they invoke state law in pursuit of private ends. See Warner v. Grand County, 57 F.3d 962, 966 (10th Cir. 1995). Even in the absence of a qualified immunity defense, however, a plaintiff must plead and prove both the existence of a conspiracy and the actual deprivation of rights in order to prevail on a conspiracy claim under 42 U.S.C. § 1983. See Dixon, 898 F.2d at 1449. A conspiracy under 42 U.S.C. § 1985 has separate and distinct requirements, which include a showing of "class-based or racially discriminatory animus." Bisbee, 39 F.3d at 1102; Dixon, 898 F.2d at 1447.

Because these federal civil-rights statutes are not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere, the analysis of Plaintiffs' federal civil-rights claims necessarily begins by identifying the specific constitutional rights which Defendants are alleged to have violated. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Reno v. Flores, 507 U.S. 292, 302 (1993); Dixon, 898 F.2d at 1448. The federal constitutional rights at issue in this case arise from the language in the Fourteenth Amendment which provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV.

-16-

The concept of due process includes both procedural and substantive components. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000).

The Supreme Court also has recognized that the Fifth Amendment's prohibition on the taking of private property without just compensation applies to the states by virtue of the Fourteenth Amendment. See Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Chicago B. & Q. R. Co. v. Chicago, 166 U.S. 226 (1897)). Accordingly, Plaintiffs takings claims are properly analyzed under the Supreme Court's Fifth Amendment takings jurisprudence rather than a more generalized substantive due process framework. See Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir. 1991). Inasmuch as Plaintiffs allege a procedural due process claim regarding the adequacy of post-deprivation remedies, such a claim also is subsumed by the takings analysis. See Rocky Mtn. Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Paso County, 972 F.2d 309, 311 (10th Cir. 1992).

The Fourteenth Amendment also incorporates the Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; see Mapp v. Ohio, 367 U.S. 643, 655 (1961). Claims against law enforcement officers arising from an arrest or seizure of a person are appropriately addressed under this Fourth Amendment standard because the Fourth

-17-

Amendment provides a more explicit textual source of constitutional protection than the Due Process Clause in this context.  See Graham, 490 U.S. at 394-95; Gerstein v. Pugh, 420 U.S. 103, 125 (1975).  Seizures of real property, on the other hand, may implicate the procedural component of the Due Process Clause as well as the Fourth Amendment.  See United States v. James Daniel Good Real Property, 510 U.S. 43, 51-52 (1993).

In this case, Count III of Plaintiffs' *Complaint* alleges that Defendants Hurd, Cramer, and Spivey are responsible for depriving (and conspiring to deprive) Plaintiffs of their property rights relating to the F. Hilbern Ditch without due process of law.  Inasmuch as Count III of the *Complaint* also challenges Defendant Cramer's arrest of Plaintiff Limacher during the course of the dispute over the temporary dam constructed by Plaintiff Limacher, the *Complaint* also alleges an unconstitutional deprivation of Plaintiff Limacher's liberty interest.  In response to the motions filed by Defendants Cramer, Spivey, and the State of New Mexico, Plaintiffs clarify that they are claiming violations of both the procedural and substantive components of the Due Process Clause with respect to these alleged deprivations.  Finally, Count IV of Plaintiffs' *Complaint* alleges a takings claim in addition to Plaintiffs' substantive and procedural due process claims, and Count V seeks injunctive relief with respect to the claims set forth in the preceding counts.

The Court first addresses Plaintiffs' claim that they were not afforded adequate procedural due process before the alleged deprivation of their property rights associated with the F. Hilbern Ditch.  Utilizing the applicable Fourth Amendment standard noted above, the Court next addresses the deprivation of Plaintiff Limacher's liberty interest that occurred

when Defendant Cramer arrested him for trespassing on August 10, 2001.  The Court then addresses Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983 and 1985 relating to the alleged deprivations described above.  Finally, the Court jointly addresses Plaintiffs' post-deprivation due process claim and takings claim relating to their alleged property rights associated with the F. Hilbern ditch.

### 1.    Pre-Deprivation Procedural Due Process Claim

To prevail on their claim that they were not afforded adequate notice and opportunity to be heard prior to the alleged deprivation of their property rights, Plaintiffs must first establish that state action deprived them of "a protectible property interest."  Hyde Park Co., 226 F.3d at 1210; see Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999) (noting that the presence of such property interests cannot simply be assumed for purpose of analysis).  The parties devote a considerable portion of their briefs to debating the issues of whether or to what extent Plaintiffs' property rights extend to the temporary dam that Plaintiff Limacher periodically constructed across the bed of the Rio Ruidoso during the Summer of 2001.  The following facts, however, are not disputed:  (1) that Plaintiffs are the owners of water rights in the Rio Ruidoso that were adjudicated by the District Court of Chaves County, New Mexico in State of New Mexico ex rel. Reynolds v. L.T. Lewis, Nos. 20294 and 22600 (consolidated), supra, (2) that the point of diversion associated with these water rights is the F. Hilbern Ditch, and (3) that the F. Hilbern Ditch draws water from the Rio Ruidoso at a point that is upstream from the

location where Plaintiff Limacher periodically constructed the temporary dam during the Summer of 2001.

When viewed in the light most favorable to Plaintiffs, the evidence of record also supports a reasonable inference that the efforts of Defendants Spivey and Cramer to regulate the height of the temporary dam at this location had the effect of reducing the flow of water into the F. Hilbern Ditch. Thus, even if these Defendants are correct that Plaintiffs have no property rights in the temporary dam itself or the river bed in which it was located, Defendants' efforts to regulate the height of that dam may have impacted (at least temporarily) Plaintiffs' ability to make full use of their previously adjudicated water rights associated with the F. Hilbern Ditch. Thus, for the purpose of analyzing the pending motions, the Court concludes that Plaintiffs have shown at least a temporary deprivation of a protectible property interest.

The general rule is that the Due Process Clause requires some kind of hearing prior to the deprivation of a significant property interest. See James Daniel Good Real Property, 510 U.S. at 48; Miller, 945 F.2d at 353. There are, however, exceptional circumstances in which no pre-deprivation hearing is required, or in which pre-deprivation procedural protections can be pared down or abbreviated. See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974) (allowing for postponement of notice and opportunity for a hearing when the seizure involves the "sort [of property] that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given"); Miller, 945 F.2d at 353 ("[W]here the state is confronted with an emergency, it may

deprive an individual of his or her property without first providing a hearing."); Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989) (discussing circumstances in which a predeprivation hearing may be limited to oral notice and a brief opportunity to respond at the time the notice is given); Hamilton v. Myers, 281 F.3d 520, 533 (6th Cir. 2002) (noting situations in which "the requirements of due process are met if the state provides an adequate post-deprivation remedy").

These exceptions reflect the view that due process is a "flexible" concept that only "calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine what process is due in a particular situation, courts strive to reach an appropriate balance among the following factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

In this case, Plaintiffs contend that the Due Process Clause required formal written notice by certified mail and a full hearing resulting in a court order before Defendants could breach or lower the temporary dam that Plaintiff Limacher periodically constructed across the bed of the Rio Ruidoso during the Summer of 2001. Appying the Mathews balancing test, the Court reaches a different conclusion.

A person's rights with respect to real property (including water rights) unquestionably constitute "a private interest of historic and continuing importance." James Daniel Good Real Property, 510 U.S. at 53-54. Such private interests carry significant weight in the Mathews balancing test, especially in a forfeiture proceeding where the Government seeks to deprive a person of practically all the "valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." Id. at 54.

In this case, however, the actions of Defendants Cramer and Spivey were not directed toward causing Plaintiffs to forfeit or lose title to their water rights associated with the F. Hilbern Ditch. Rather, these Defendants were responding to Plaintiff Limacher's construction and reconstruction of a temporary dam across the bed of the Rio Ruidoso that had the effect of diverting the entire flow of the river into the F. Hilbern Ditch, thereby causing erosion and the formation of stagnant pools of water downstream, as well as other adverse impacts on downstream water users. (Ex. A-5 to Doc. No. 27.) In addition, Defendants Spivey and Cramer were responding to a breach of the peace involving Plaintiff Limacher and Defendant Hurd, which had resulted in property damage (such as cutting of locks) and the potential for violence. (Ex. A-2, A-5 to Doc. No. 27; Ex. 5, 6 to Doc. No. 20.)

Under these circumstances, the State has a strong interest in taking prompt action to lower the height of the temporary dam and keep the peace among the property owners along that stretch of the river. The undisputed facts and evidence of record indicate that Defendants did not seek the issuance of the Compliance Order or the arrest of Plaintiff

-22-

Limacher until less restrictive measures (such as meeting informally with the parties) had proven ineffective. Inasmuch as such "less restrictive measures . . . would not suffice to protect the Government's interests in preventing the . . . continued unlawful use of the real property," Defendants have established exigent circumstances that justified taking action before providing additional notice and opportunity to be heard. See James Daniel Good Real Property, 510 U.S. at 62; Miller, 945 F.2d at 353-54.

The series of measures that Defendants employed before the dam was breached or lowered pursuant to the Compliance Order also indicate that there was some degree of predeprivation notice and opportunity to be heard in this case. Such measures served as "'an initial check against mistaken decisions'" and had the effect of reducing the risk of an erroneous deprivation of Plaintiffs' property interests. Powell, 891 F.2d at 1458 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1984)); see Miller, 945 F.2d at 354. The postdeprivation remedies available to Plaintiffs after the Compliance Order was issued also serve to reduce this risk.[1] See Powell, 891 F.2d at 1459-60.

The procedural protections afforded to Plaintiffs in this case must be evaluated in the context of New Mexico's statutory scheme for the appropriation and use of the State's surface waters. See generally N.M. Stat. Ann. ch. 72 (Michie 1978 & Supp. 1997). In this regard, the Supreme Court has reasoned that

---

[1]These post-deprivation remedies are discussed in Section II.B.4 *supra* concerning Plaintiffs' takings claim. See Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311 (discussing circumstances in which analysis of a procedural due process claim is subsumed by analysis of a takings claim).

> a legislature generally provides constitutionally adequate process simply by
> enacting the statute, publishing it, and, to the extent the statute regulates
> private conduct, affording those within the statute's reach a reasonable
> opportunity both to familiarize themselves with the general requirements
> imposed and to comply with those requirements.

United States v. Locke, 471 U.S. 84, 108 (1985). Thus, publication of the relevant statutes is sufficient to notify Plaintiffs of the State Engineer's statutory authority with respect to appropriation and use of the State's surface waters, see N.M. Stat. Ann. §§ 72-2-1, 72-2-8(A), including the State Engineer's authority to issue compliance orders and the statutory procedure for challenging such orders, see id. §§ 72-2-18(A) (Supp. 2001), 72-2-8(H), 72-2-16 through -18. Publication also is sufficient to notify Plaintiffs of the statutory requirements for permitting the construction of dams, see id. § 72-5-32, including the 1997 amendment to that provision which superseded the New Mexico Court of Appeals' holding in State ex. rel. State Engr. v. Lewis, 1996-NMCA-019, 121 N.M. 323, 327, 910 P.2d 957, 961.

In addition to this legislative notice, Plaintiff Limacher had actual notice and a brief opportunity to respond before the temporary dam was breached or lowered pursuant to the State Engineer's Compliance Order on July 19, 2001. As indicated in the correspondence and reports referenced in Plaintiffs' response brief, as well as Plaintiff Limacher's letter of July 28, 2001, Defendant Spivey made more than one attempt to meet with Plaintiff Limacher before she wrote the memorandum that led to the issuance of the Compliance Order. Defendant Spivey eventually succeeded in locating Plaintiff Limacher and speaking with him about the temporary dam on July 12, 2001. The undisputed facts and evidence of record further indicate that Defendant Spivey delivered a copy of the Compliance Order to

one of Plaintiff Limacher's employees, and in his letter of July 28, 2001, Plaintiff Limacher admitted that he received a copy of the Compliance Order before the temporary dam was breached pursuant to that order. (Ex. A-2, A-5, A-7 to Doc. No. 27.)

Thus, as of July 12, 2001, Plaintiff had oral notice of Defendant Spivey's position, as well as a brief opportunity to respond. The written accounts of the meeting on July 12, 2001, including Plaintiff Limacher's own account, indicate that he became verbally abusive and did not want to speak to Defendant Spivey (or other representatives from the State Engineer's Roswell Office) because of a prior dispute concerning water rights to another ditch. (Ex. A-2, A-5, A-7 to Doc No. 27.) Plaintiff Limacher also admitted that he told Defendant Hurd "that people that destroyed Irrigation Dams could get shot." (Ex. A-7, at 14.)

Given Plaintiff Limacher's words and conduct at the meeting described above, the probable value, if any, of additional or substitute procedural safeguards prior to the issuance of the Compliance Order was minimal. Although he was on notice of the State Engineer's statutory authority and was given the opportunity to speak with a representative of the Office of the State Engineer, Plaintiff Limacher indicated that he was not interested in speaking with that representative. His verbal abuse and comments about people getting shot also indicated that further discussion of the matter in an informal context was not going to be productive.

Finally, Plaintiff's letter of July 28, 2001, as well as his testimony at the preliminary injunction hearing, indicate that he owns the majority of the water rights associated with the F. Hilbern Ditch and has taken a leadership role as the "mayordomo" of that ditch. The

undisputed facts and evidence of record also indicate that Plaintiff Limacher was the individual who took charge of constructing and reconstructing the temporary dam in the Rio Ruidoso during the Summer of 2001.  (Ex. A-7 to Doc. No. 27.)  In light of these facts and the dearth of evidence regarding the roles of other Plaintiffs, the Court concludes that the notice and opportunity to be heard that was afforded to Plaintiff Limacher before the dam was breached or lowered on July 19, 2001, was reasonably calculated to apprise other interested parties of this impending action and was, therefore, sufficient for purposes of providing to the other Plaintiffs the level of pre-deprivation due process required by the Fourteenth Amendment.

Having considered the relevant factors under the Mathews balancing test, the Court concludes that Plaintiffs were afforded the predeprivation process they were due under the Fourteenth Amendment.  As there was no clearly established law to the effect that the Fourteenth Amendment requires additional pre-deprivation process in this type of situation, Defendants Spivey and Cramer are entitled to qualified immunity with respect to Plaintiffs' procedural due process claims under 42 U.S.C. §§ 1983 and 1985.  See Powell, 891 F.2d at 1462-63; Hamilton, 281 F.3d at 533.

### 2.    Reasonableness of Plaintiff Limacher's Arrest

The Court next addresses Plaintiff Limacher's claim that he was unlawfully arrested by Defendant Cramer while attempting to reconstruct the temporary dam on August 10, 2001, after the Compliance Order had been issued.  The arrest of Plaintiff Limacher undoubtedly constitutes a deprivation of a liberty interest protected by the Fourteenth

Amendment's Due Process Clause.  The question of what process is due in the context of arrest and detention on criminal charges, however, is subsumed by the Supreme Court's Fourth Amendment jurisprudence.  See James Daniel Good Real Property, 510 U.S. at 50-51 (citing Graham, 490 U.S. at 394-95, and Gerstein, 420 U.S. at 125).  The more specific standard applicable under the Fourth Amendment also precludes a more generalized substantive due process analysis in this context.  See Graham, 490 U.S. at 394-95.

When, as here, a defense of qualified immunity is raised by an individual Defendant in the context of the Fourth Amendment, the Court applies two distinct standards of reasonableness.  First, in determining whether an individual defendant's actions violated a specific right, the Court must decide whether the defendant conducted a search or seizure that was "unreasonable" under the Fourth Amendment.  Second, if such a violation is found, then in determining whether the constitutional right at issue was clearly established at the time of the search or seizure, the Court must answer the additional question of whether the contours of the right were "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); accord Saucier v. Katz, 533 U.S. 194, 203-04 (2001).

Generally, a full custodial arrest conducted without a warrant in a public place requires probable cause.  See United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001); United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998).  "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to

believe that the arrestee has committed or is committing an offense.'" <u>Oliver</u>, 209 F.3d at 1186 (quoting <u>Romero v. Fay</u>, 45 F.3d 1472, 1476 (10th Cir. 1995)). "[T]he standard of probable cause 'applie[s] to all arrests, without the need to "balance" the interests and circumstances involved in particular situations.'" <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001) (quoting <u>Dunaway v. New York</u>, 442 U.S. 200, 208 (1979)).

The veracity of crime victims, or crime-scene bystanders, ordinarily is assumed in making determinations of probable cause. <u>See</u> <u>United States v. Blount</u>, 123 F.3d 831, 835 (5th Cir. 1997) (en banc). Nevertheless, police officers "may weigh the credibility of witnesses" and are not required to believe one witness's testimony over that of another in making such a determination. <u>Baptiste v. J.C. Penney Co.</u>, 147 F.3d 1252, 1259 (10th Cir. 1998). In this case, Defendant Cramer was entitled to rely on the veracity of the complaining witnesses, along with his other observations, in deciding whether he had reason to arrest Plaintiff Limacher for trespassing on Defendant Hurd's property.

In addition to speaking with other witnesses, Defendant Cramer advised Plaintiff Limacher that he was trespassing and asked him to leave or remove the dam. It was only after Plaintiff Limacher refused to do so that Defendant Cramer placed him under arrest. Under the circumstances, Defendant Cramer's colloquy with Plaintiff Limacher provided "'the least intrusive means reasonably available to verify or dispel . . . in a short period of time'" the officers' suspicions as to whether Plaintiff Limacher had committed a criminal offense. <u>United States v. Holt</u>, 264 F.3d 1215, 1229 (10th Cir. 2001) (en banc) (quoting

Florida v. Royer, 460 U.S. 491, 500 (1983)) (emphasis deleted).  Accordingly, the Court concludes that Defendant Cramer's actions leading up to the arrest were reasonable.

Considering the totality of the circumstances alleged in the *Complaint* and the documents referenced therein, the Court further concludes that the arrest was supported by probable cause.  The probable-cause standard does "'not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" United States v. Pollack, 895 F.2d 686, 691 (10th Cir. 1990) (quoting Adams v. Williams, 407 U.S. 143, 148-49 (1972)).  Indeed, "[t]he fact that the police did not, at the time of arrest, know exactly what crime had occurred is not relevant, so long as they had probable cause to believe '*an* offense' had been committed." United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)).  Thus, in order to show that he is entitled to qualified immunity, Defendant Cramer need not establish beyond dispute that Plaintiff lacked any property rights with respect to the temporary dam he was constructing in the bed of the Rio Ruidoso on August 10, 2001.  It is sufficient that Defendant Cramer satisfied the lesser standard of probable cause.

To the extent that Defendant Cramer was mistaken in his interpretation of the law of trespass or the regulation of dams in New Mexico, his mistake was a reasonable one in light of the complex nature and history of water rights in the Rio Ruidoso.  Cf. Hamilton, 281 F.3d at 533 ("Ambiguity [of regulations] . . . argues in favor of qualified immunity.").  "The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.

Here, this concern weighs in favor of granting qualified immunity to Defendant Cramer on Plaintiff Limacher's civil-rights claims arising from the events that transpired on August 10, 2001.  As the Supreme Court noted in <u>Atwater</u>, 532 U.S. at 354, an officer who has probable cause to arrest a suspect is not required to balance the "costs and benefits" of a full custodial arrest, or to determine whether or not such an arrest is "in some sense necessary" in order to qualify for immunity from suit under 42 U.S.C. § 1983.  For these reasons, Defendant Cramer is entitled to qualified immunity on Plaintiff Limacher's civil rights claims relating to his arrest on August 10, 2001.

### 3.    <u>Conspiracy Claims</u>

It follows from the above analysis that Plaintiffs' conspiracy claims under 42 U.S.C. § 1983 fail as a matter of law because there has been no actual deprivation of Plaintiffs' Fourteenth Amendment rights to due process.  <u>See</u> <u>Dixon</u>, 898 F.2d at 1449 (concluding that a conspiracy claim under 42 U.S.C. § 1983 requires a plaintiff to plead and prove both the existence of a conspiracy and an actual deprivation of rights).  Having concluded that Plaintiffs cannot prevail on this essential element of their conspiracy claims under 42 U.S.C. § 1983, the Court grants the motions of Defendants Cramer, Spivey, and the State of New Mexico to dismiss these claims.

It is unclear from Plaintiffs pleading which of the private Defendants they intend to include in their conspiracy claims under 42 U.S.C. § 1983.  Some of the conspiracy allegations only refer to Defendant Hurd, while the prayer for damages on Plaintiffs' civil rights claims also refers to Defendant Long.  In any case, s*ua sponte* dismissal of any

conspiracy claims under 42 U.S.C. § 1983 against Defendants Hurd, Long, and Quintana is warranted under these circumstances because, even assuming that these private Defendants are not entitled to the defense of qualified immunity, it is patently obvious from the above analysis that Plaintiffs cannot prevail on an essential element of these claims. See Hall, 935 F.2d at 1109-10; Curley, 246 F.3d at 1284.

Plaintiffs conspiracy claims under 42 U.S.C. § 1985 also must be dismissed at this juncture. Plaintiffs have failed to specify which subsection(s) of this statute they rely upon to support their claims, and, as noted above, their pleading is unclear as to which of the private Defendants are alleged to have been involved in this conspiracy. Nevertheless, it is clear that "[a] violation of section 1985 must include class-based or racially discriminatory animus." Bisbee, 39 F.3d at 1102. It is equally clear that Plaintiffs have failed to plead or prove such an animus in this case. Accordingly, the Court grants the motions of Defendants Cramer, Spivey, and the State of New Mexico to dismiss Plaintiffs' conspiracy claims under 42 U.S.C. § 1985, and Plaintiffs' conspiracy claims under this statute against any of the private Defendants (Hurd, Quintana, and Long) are dismissed *sua sponte*. Finally, to the extent Plaintiffs' pleading includes any other federal claims involving conspiracy allegations which are the subject of any pending dispositive motions and which are not addressed elsewhere in this *Memorandum Opinion and Order*, those claims are deemed abandoned. See Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1031 (4th Cir. 1994).

4.        **Takings Claim and Related Due Process Claims**

The Court next addresses Plaintiffs' remaining claims that the alleged deprivation of their property rights associated with the F. Hilbern Ditch violated the Fourteenth Amendment's Due Process Clause and constituted an unlawful taking without just compensation.  The Court analyzes these claims together because the Tenth Circuit has indicated that they are properly considered under the same analytical framework, namely that employed in the Supreme Court's Fifth Amendment takings jurisprudence.  See Miller, 945 F.2d at 352-53; Rocky Mtn. Materials & Asphalt, Inc., 972 F.2d at 311; cf. Flores, 507 U.S. at 302 (noting that the doctrine of judicial self-restraint strongly counsels against breaking new ground in the area of substantive due process).

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation."   Palazzolo, 533 U.S. at 617.   Takings that require just compensation may occur in several ways.  First, "even a minimal 'permanent physical occupation of real property' requires compensation under the Clause."  Id. (quoting Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 427 (1982)).  Second, the Supreme Court has recognized a category of "regulatory takings" with respect to government actions that "do not encroach upon or occupy the property yet still affect and limit its use to such an extent that a taking occurs."  Id.  Government regulation may constitute such a taking if it "denies all economically beneficial or productive use of land," Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992), or if it fails the more general test articulated

in <u>Penn Central Transp. Co. v. City of N.Y.</u>, 438 U.S. 104, 124 (1978), which depends on " a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." <u>Palazzolo</u>, 533 U.S. at 617.

Plaintiffs' *Complaint* in the present action alleges that the Compliance Order issued by the Office of the State Engineer on July 16, 2001, constituted an unlawful taking. (Compl. ¶ 52.)  Plaintiffs' *Complaint* also alleges that the removal of portions of the temporary dam constructed by Plaintiff Limacher constituted an unlawful taking.  (Compl. ¶ 58.) Plaintiffs do not specify whether they consider these actions to constitute physical or regulatory takings.  From the context of Plaintiffs' pleading, however, the only reasonable interpretation is that Plaintiffs are pursuing a claim for a regulatory taking, *i.e.*, that the State's regulatory actions with respect to breaching or lowering the temporary dam in the Rio Ruidoso had the effect of limiting the scope of Plaintiffs' water rights and/or easement rights associated with the F. Hilbern Ditch.

Regardless of how Plaintiffs' takings claims are categorized, the Court concludes that they are not ripe for adjudication in federal court at this time.  Ripeness is a question of subject matter jurisdiction under Article III of the United States Constitution.  <u>See</u> <u>Bateman v. City of West Bountiful</u>, 89 F.3d 704, 706 (10th Cir. 1996).  Thus, Defendants may challenge the ripeness of Plaintiffs' takings claims by means of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  <u>See</u> <u>id.</u>

In <u>Williamson County Regional Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985), the Supreme Court imposed two ripeness requirements that must be satisfied before a civil action for an unlawful taking without just compensation may be litigated in federal court.  First, Plaintiffs must satisfy a *finality* requirement by demonstrating that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  <u>Id.</u> at 186; <u>see</u> <u>Daniels v. Area Plan Comm'n of Allen County</u>, 306 F.3d 445, 454 (7th Cir. 2002).  Second, Plaintiffs also must satisfy an *exhaustion* requirement by showing that they have "sought compensation through the procedures the State has provided for doing so."  <u>Williamson County</u>, 473 U.S. at 194; <u>see</u> <u>Daniels</u>, 306 F.3d at 454-55.

In this case, the parties devote a considerable portion of their briefs to debating whether or to what extent New Mexico law provides a cause of action for inverse condemnation in the context of water rights.  This debate is relevant to the exhaustion requirement noted above.  Nevertheless, the Court finds it unnecessary to decide whether Plaintiffs have satisfied this exhaustion requirement because the Court concludes that Plaintiffs have failed to satisfy the finality requirement.

The Supreme Court's takings jurisprudence "uniformly reflect[s] an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it."  <u>McDonald, Sommer & Frates v. Yolo County</u>, 477 U.S. 340, 351 (1986).  In one of its most recent opinions on this issue, the Supreme Court explained this finality requirement as follows:

-34-

a takings claim based on a law or regulation that which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law.  As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet occurred.

Palizzolo, 533 U.S. at 620-21.  Before such processes have reached their conclusion, courts cannot determine whether a regulation goes too far in burdening property rights because they do not yet know how far the regulation goes.  See id. at 622; McDonald, Sommer & Frates, 477 U.S. at 348.

In this case, the Court cannot determine whether the State of New Mexico's regulation of the height of the temporary dam constructed by Plaintiff Limacher on the Rio Ruidoso goes too far because a final decision on the extent of that regulation and its impact on Plaintiffs' water rights and easement rights associated with the F. Hilbern Ditch has not yet been reached.  Plaintiff Limacher has made at least one documented attempt to invoke the State Engineer's administrative procedure for challenging the Compliance Order under N.M. Stat. Ann. § 72-2-16.  That attempt included a request for negotiation prior to a hearing.  While the parties presented conflicting affidavits as to what, if anything, resulted from these efforts at negotiation, the evidence is not sufficient to establish that the Office of the State Engineer refused to hold a hearing, or that such a hearing would be futile at this juncture.[2]

---

[2]Although Defendants initially argued in their written response to Plaintiffs' motion for a preliminary injunction that Plaintiffs lacked standing to pursue an administrative appeal of the Compliance Order pursuant to N.M. Stat. Ann. § 72-2-18, they later conceded at the hearing that Plaintiff Limacher could proceed with his administrative appeal as a "person aggrieved" under N.M. Stat. Ann. § 72-2-16.  The Court is not persuaded that an administrative appeal would be rendered futile by a lack of standing.

In addition to invoking, but not exhausting, the administrative procedures for challenging the Compliance Order, Plaintiff Limacher testified at the preliminary injunction hearing that he has applied to the Office of the State Engineer for a supplemental well permit to irrigate the pasture associated with the F. Hilbern Ditch.  While the Office of the State Engineer has not yet ruled on this permit application at the time of the preliminary injunction hearing, Plaintiff Limacher has not shown that he has been denied a hearing on this application, or that the application procedure is so cumbersome as to render the application futile.

New Mexico law also contains provisions for permitting the construction of dams, see N.M. Stat. Ann. § 72-5-32, and making changes to the point of diversion, see id. § 72-5-24. An expedited procedure for making such changes is available when the delay caused by the usual permitting process "would result in crop loss or other serious economic loss to the appropriator and . . . the state engineer determines that no foreseeable detriment exists to rights of others having valid and existing rights to the use of the waters of the stream system."  Id. § 72-5-25(A).  Plaintiffs have elected not to pursue any remedies available under these statutes.  Such an election does not necessarily mean that these statutory procedures are unavailable or inadequate.

At this juncture, the record only reflects that Plaintiffs have been denied the ability to build a temporary dam to a height that diverts the entire flow of the Rio Ruidoso into the F. Hilbern ditch.  Plaintiff Limacher's administrative challenge to the state Defendants' regulation of the height of this temporary dam is still pending, and Plaintiffs have not

demonstrated that they have pursued and obtained a final decision as to any other method for making use of their water rights or easement rights associated with the F. Hilbern Ditch, such as the use of a river pump or other modifications to the diversion works.  Under these circumstances, the Court is unwilling to infer that the State's initial rejection of Plaintiff Limacher's plan to divert the entire flow of the Rio Ruidoso into the F. Hilbern Ditch (which is still the subject of a pending administrative proceeding) necessarily entails the rejection of a more modest plan to make use of Plaintiffs' water rights or easement rights with respect to that ditch.  Cf. McDonald, Sommer & Frates, 477 U.S. at 353 n.9 ("Rejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews.").

It follows that Plaintiffs' taking claim (and any related post-deprivation due process claims) are not ripe for federal judicial review because they do not satisfy the finality requirement articulated in Williamson County, 473 U.S. at 186, and Palizzolo, 533 U.S. at 620-21.  Accordingly, the Court concludes that these claims must be dismissed without prejudice for lack of subject-matter jurisdiction.  See Bateman, 89 F.3d at 706.

To the extent that any remaining substantive due process claim persists after the dismissal of those claims subsumed by the Court's takings analysis, the Court concludes that such a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) because Defendants' alleged actions were not arbitrary, capricious or shocking to the Court's conscience.  See Miller, 945 F.2d at 354.  As noted above, Plaintiffs are deemed to have abandoned any other federal claims stated or implied by their *Complaint* which are disputed in the pending

dispositive motions and not addressed elsewhere in this *Memorandum Opinion and Order*.

See Imperial, 37 F.3d at 1031.

### C.   Plaintiff's State Law Claims

In addition to the federal claims referenced in the preceding discussion, Count I of Plaintiffs' *Complaint* asserts claims for trespass, interference with ditch rights, water rights, and easement rights and irrigation works against Defendants Hurd, Long, and Quintana. Count II of Plaintiffs' *Complaint* asserts state-law claims of malicious abuse of process against Defendants Hurd, Spivey, and Cramer.  Count IV asserts a takings claim under Article II, Sections 18 and 20 of the New Mexico Constitution, and Count V prays for injunctive relief regarding the preceding counts.  In conjunction with his *Answer* to Plaintiffs' *Complaint*, Defendant Hurd asserts counterclaims against Plaintiff Limacher for assault, attempted battery, and trespass.

All of these claims and counterclaims arise under the laws of the State of New Mexico, and this Court does not have original jurisdiction over them.  Rather, these state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).

"The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Having granted summary judgment or dismissal with respect to all of Plaintiffs' federal claims, the Court declines to exercise

supplemental jurisdiction over Plaintiff's state-law claims.  See 28 U.S.C. § 1367(c)(3);

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

In so declining, the Court has considered whether the nature and extent of pretrial

proceedings, judicial economy, convenience, and fairness would be served by retaining

jurisdiction.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).

The Court is not convinced that these factors weigh in favor of retaining jurisdiction.  In this

regard, the Court finds that the property rights at issue in this case are creatures of state law,

and that the adjudication of the exact nature and scope of these property rights "raises a

novel or complex issue of State law."  28 U.S.C. § 1367(c)(1).  Notions of comity and

federalism demand that a state court try such claims in the first instance, absent compelling

reasons to the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478

(10th Cir. 1990).  In addition, the Court's decision not to exercise supplemental jurisdiction

is not necessarily fatal to Plaintiff's state-law claims, as federal law provides for the remand

of these state-law claims to the state court where this action originated.  See, e.g., 28 U.S.C.

§§ 1441(c), 1447(c).

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that:  (1) Defendants Spivey and

Cramer are entitled to qualified immunity with respect to Plaintiffs' federal civil-rights

claims under 42 U.S.C. §§ 1983 and 1985, (2) Plaintiffs' federal takings claim is subject to

dismissal for lack of subject-matter jurisdiction, and (3) Plaintiffs' remaining federal claims

are subject to dismissal for failure to state a claim upon which relief may be granted as to any

Defendant.  Having thus disposed of all of Plaintiffs' claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

**IT IS THEREFORE ORDERED** that the ***Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment on Count III as Against Jalayne Spivey and the State of New Mexico*** [Doc. No. 50] is **GRANTED**.

**IT IS FURTHER ORDERED** that the ***Motion to Dismiss Count IV as Against Defendants Jalayne Spivey and the State of New Mexico*** [Doc. No. 52] is **GRANTED IN PART** as to Plaintiffs' federal takings claims arising under the Fourteenth Amendment to the United States Constitution.

**IT IS FURTHER ORDERED** that the ***Motion to Dismiss Count V as Against Defendants Jalayne Spivey and the State of New Mexico*** [Doc. No. 54] is **GRANTED IN PART** at to any prayer for injunctive relief that is premised on the merits of Plaintiffs' federal claims.

**IT IS FURTHER ORDERED** that ***Defendant Cramer's Motion to Dismiss and Supporting Memorandum*** [Doc. No. 62] is **GRANTED IN PART** with respect to the federal claims against Defendant Cramer that are alleged in Plaintiffs' *Complaint*.

**IT IS FURTHER ORDERED** that Plaintiffs' federal due-process, unlawful arrest, and conspiracy claims arising under 42 U.S.C. §§ 1983 and 1985 are **DISMISSED WITH PREJUDICE** as to all Defendants.

**IT IS FURTHER ORDERED** that Plaintiffs' federal takings claims arising under the Fourteenth Amendment to the United States Constitution are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

**IT IS FURTHER ORDERED** that the state-law claims contained in Counts I, II, IV, and V of Plaintiffs' *Complaint*, as well as Defendant Hurd's counterclaims against Plaintiff Limacher, are **REMANDED** to the Twelfth Judicial District Court of Lincoln County, New Mexico.

**SO ORDERED,** this 27th day of June, 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge